Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2210 | **DATE** | February 21, 2002 |
| **CASE TITLE** | *Galiea International, L.L.C. v. Ryanair* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, Plaintiff/Counter-Defendant Galieo International, L.L.C.'s Motion to Dismiss Counts III and IV of Ryanair's Amended Counterclaims [15-1], pursuant to Federal Rule of 12(b)(6), is GRANTED as to Counts III and IV. The Court, however, grants Ryanair leave to properly replead its good faith claim (Count IV) consistent with Illinois law. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | FEB 27 2002 | |
| | Docketing to mail notices. | | | date docketed | 33 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| RTS | courtroom deputy's initials | 02 FEB 26 PM 5:24 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GALIEO INTERNATIONAL, L.L.C., ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 01 C 2210 |
| RYANAIR, LTD. ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |

FEB 2 7 2002

## MEMORANDUM AND ORDER

Plaintiff/Counter-Defendant Galieo International, L.L.C. ("Galieo") filed an Amended Complaint against Defendant/Counter-Plaintiff Ryanair, Ltd. ("Ryanair") alleging breach of contract. Ryanair responded by filing four amended counterclaims alleging: breach of contract (Counts I and II); a claim under the Illinois Consumer Fraud and Deceptive Practices Act ("the ICFA") (Count III); and a claim for breach of the implied duty of good faith (Count IV). The current matter is before the Court on Galieo's Motion to Dismiss Counts III and IV of Ryanair's Amended Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is GRANTED.

## BACKGROUND[1]

In 1993, Galieo, a provider of computerized airline reservation services, and Ryanair, an airline, entered into the Galieo International Global Airline Distribution Agreement ("the Distribution Agreement"). Under the Distribution Agreement, travel agents that subscribe to Galieo's Customer Reservation System ("CRS") would be able to access Ryanair's schedules,

---

[1] The facts set forth in the Background section are taken from Ryanair's Answer and Amended Counterclaims.

prices, seat availability and book seats on Ryanair flights for their customers. In return for making Ryanair part of Galieo's CRS, Ryanair agreed to pay Galieo a fee for each booking made on Ryanair through the CRS.

The parties operated under the Distribution Agreement until April 14, 2000, when Ryanair notified Galieo that it was terminating the Distribution Agreement effective July 31, 2000. Ryanair contends that Galieo breached the Distribution Agreement by overbilling Ryanair for payments Ryanair made to Galieo for reservations that were made on the CRS. According to Ryanair, Galieo used an "incentive scheme," whereby Galieo offered travel agents using its CRS services commissions based on the number of fares they booked on Ryanair. Ryanair contends travel agents booked thousands of fictitious and speculative fares which did not result in the issuance of a ticket on a Ryanair flight. Galieo, however, allegedly obtained payment from Ryanair for these bookings. As a result of the "incentive scheme," Ryanair alleges that it was left with "an inordinate number of empty, unpaid seats on [its] flights" and "lost the opportunity to sell many tickets on its flights."

Ryanair contends that under the Distribution Agreement, Galieo was required to issue Ryanair credits for payments made for reservations the passengers cancelled prior to the issuance of a ticket. Pursuant to the Distribution Agreement, Ryanair requested that Galieo issue credits for fees charged to Ryanair for reservations that did not result in the actual purchase of a ticket. Ryanair contends that Galieo refused to issue the proper credits under the Distribution Agreement.

Subsequent to notifying Galieo that it was terminating the Distribution Agreement, Ryanair sought assurances from Galieo that it would service reservations booked on Ryanair

flights booked on the CRS prior to the termination of the Distribution Agreement, July 31, 2000, but for which travel was not to occur until after that date. Ryanair alleges that Gallieo initially agreed to service reservations for flights set to commence after the termination date. However, Ryanair alleges that Gallieo reversed its earlier position and later stated that it would only service the reservations if Ryanair paid additional fees beyond the fees already paid to Gallieo under the Distribution Agreement.

After refusing to service reservations after the termination date, Gallieo sent Ryanair an invoice for reservations made on the CRS in May and June of 2000. Ryanair, however, refused to pay these invoices because Galieo allegedly breached the Distribution Agreement by: (1) overbilling Ryanair for reservations that did not result in the actual purchase of tickets; and (2) refusing to service reservations after the termination date.

In response to Ryanair's refusal to pay the May and June invoices, Galieo filed the instant action for breach of the Distribution Agreement. Ryanair responded by filing four amended counterclaims alleging: breach of contract (Counts I and II); a claim under the ICFA (Count III); and a claim for breach of the implied duty of good faith (Count IV). The current matter is before the Court on Galieo's Motion to Dismiss Counts III and IV of Ryanair's Amended Counterclaims, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construing allegations liberally and viewing them in the light most favorable to the non-moving party. See, e.g., McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992); Gillman v. Burlington N. R.R. Co., 878 F.2d 1020,

1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Kunik v. Racine County, Wis., 946 F.2d 1574, 1579 (7th Cir. 1991) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

The court will accept all well-pled factual allegations in the complaint as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. Craigs, Inc. v. General Electric Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992).

## DISCUSSION

Galieo has moved this Court to dismiss Counts III and IV of Ryanair's amended counterclaim and to strike Ryanair's request for attorney's fees in Counts I and II. The Court will address each of these arguments.[2]

### I. Claims Under the ICFA

Galieo contends that this Court should dismiss Count III (the ICFA claim) because: (A) it is preempted under the Airline Deregulation Act ("ADA"); (B) Ryanair has failed to state a cause of action under the ICFA; (C) the ICFA claim is duplicative of Ryanair's contract claim; and (D) Ryanair has not sufficiently pled standing. Because this Court finds that Count III (the ICFA

---

[2] Because Ryanair has withdrawn its request for attorney's fees in Counts I and II (Resp. at 2 n.1), the Court will not discuss this contention and denies it as moot.

claim) is preempted under the ADA, the Court will only address the preemption issue.

Congress enacted the Airline Deregulation Act ("ADA") "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services." H.R.Conf.Rep. No. 95-1779, 95th Cong., 2d Sess. 53 (1978), reprinted in, 1978 U.S.C.C.A.N. 3737, 3773. The ADA largely deregulated the domestic airline industry. American Airlines, Inc. v. Wolens, 513 U.S. 219, 222-23 (1995). To prevent states from undoing the ADA, Congress included a preemption clause, Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992), which provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. . . ." 49 U.S.C. § 41713(b)(1).

The Supreme Court first visited the scope of the ADA's preemption clause in Morales, 504 U.S. at 378, where the court addressed the "Travel Industry Enforcement Guidelines ("the Guidelines")," which were promulgated by the National Association of Attorneys General to govern the content and format of airline fare advertising. Several states attempted to enforce the Guidelines through their consumer protection laws to stop allegedly deceptive advertising by airlines. Id. Noting that the plain language of the preemption clause "express[es] a broad preemptive purpose," the court determined that the states' actions "relat[ed] to [airline] rates, routes, or services," and therefore, held that the fare advertising provisions of the Guidelines were preempted by the ADA. Id. at 388-89. The court noted that the Guidelines set "binding requirements as to how airline tickets may be marketed," which "would have [had] a significant impact upon . . . the fares [airlines] charge[d]." Id. at 390. The court further noted that the airlines would not have "*carte blanche* to lie and deceive customers" because the Department of

Transportation retained the power to prohibit advertisements that did not further competitive pricing. Id. at 390-91.

The Supreme Court revisited the scope of the ADA preemption clause in Wolens, 513 U.S. at 224, where the court addressed claims brought in two class actions that arose from changes made by American Airlines to its frequent flyer program. The plaintiffs complained that American Airlines violated the ICFA by modifying its frequent flyer program, devaluing credits that the members of the program had already earned. Id. The Illinois Supreme Court ruled that the lawsuits were not preempted because the frequent flyer program was not "essential" to American Airlines' services, but was only of "peripheral" importance. Id. (quoting Wolens v. American Airlines, Inc., 589 N.E.2d 533 (Ill. 1992)).

The United States Supreme Court reversed the Illinois Supreme Court's decision to permit the plaintiffs' consumer fraud claims, but affirmed its holding that the plaintiffs' breach of contract claims were not preempted. The court held that the ICFA served as a means "to guide and police the marketing practices of the airlines," and therefore, was related to airline "rates and services" and was preempted by the ADA. Id. at 228-29. However, the Court held that the ADA did not preempt the plaintiffs' contract claims, which sought "recovery solely for the airline's alleged breach of its own, self-imposed undertakings." Id.

Following the Supreme Court's decisions in Morales and Wolens, the Seventh Circuit in Travel All Over the World v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 (7th Cir. 1996) and United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 609 (7th Cir. 2000), held that claims under state law are "preempted if *either* the state rule expressly refers to air carriers' rates, routes, or services, or application of the state's rule would have a significant economic impact upon

them." Mesa, 219 F.3d at 609 (emphasis in original).

Here, Galileo contends that the ADA preempts Ryanair's third amended counterclaim because the ICFA: (1) relates to airline "services"; and (2) will have a significant economic impact upon airline services. The Court will address each of these contentions in turn.

**1.     Scope of "Services" Under the ADA**

To determine whether the application of the ICFA to Galieo's CRS relates to airline "service," the Court first looks to Travel All Over the World, 73 F.3d at 1433, where the Seventh Circuit adopted the Fifth Circuit's definition of "services" set forth in Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995):

> Services generally represent a bargained-for or anticipated provision of labor from one party to another . . . . [This] leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

Travel All Over the World, 73 F.3d at 1433 (quoting Hodges, 44 F.3d at 336).

Unfortunately, neither Travel All Over the World nor any other decisions in this circuit have specifically addressed whether a CRS is related to airline services.[3] Therefore, the Court will look to courts outside this jurisdiction which have addressed the instant issue. For example, in Lyn-Lea Travel Corp. v. American Airlines, Inc., No. CA3:96-CV-2068-BC, 1997 U.S. Dist. LEXIS 21119 (N.D. Tex. Dec. 2, 1997), aff'd, 139 F.3d 899 (5th Cir.1998), a travel agency filed an action under several theories of state law stemming from an agreement relating to the use of a

---

[3]     Although the instant issue has not been addressed in this circuit, the Court notes that in Mesa, the Seventh Circuit noted that "[b]ecause Wolens held general consumer-fruad law preempted, [counter claimants] have big problems." 219 F.3d at 608.

CRS system. The district court, following the Hodges's definition of "services," held that claims under the Texas Deceptive Trade Practices Act were preempted because the use of a CRS system had a "connection with the airline's 'rates' and 'services.'" Id. at *20-23, 30. In making this decision, the court noted that under Hodges, "preemption extends to all of the economic factors that go into the provision of the quid pro quo for [a] passenger's fare, including . . . reservation . . . practices." Id. at *21 (quoting Hodges, 44 F.3d at 337).

Likewise, in Frontier Airlines, Inc. v. United Airlines, Inc., 758 F. Supp. 1399, 1402 (D. Col. 1989), the plaintiff alleged that the defendant airline's marketing of CRS services to travel agents violated Colorado's antitrust and unfair competition statutes. In holding that a CRS is a "service" within the meaning of the ADA, the court noted that "CRS services are unique to the airline industry. Centralized reservation systems for competing airlines, which serve functions beyond reservations for a single airline, are unlike services provided in any other industry." Id. at 1408-09. Consequently, the court held that the ADA preempted the Colorado statutes. Id.

Here, given the above decisions holding that a CRS is a "service" within the ADA and the Seventh Circuit's broad proposition that "general consumer fraud law [is] preempted" by the ADA, Mesa, 219 F.3d at 608, this Court finds that Ryanair's third amended counterclaim under the ICFA is preempted by the ADA. Ryanair contends that its ICFA claim stems from its purchase of Galieo's CRS services for Ryanair's "own use in making its flight information available to travel agents and enabling travel agents to book reservations on Ryanair's flights." (Ryanair's Countercl. at ¶ 31) According to Ryanair, Galieo used an "incentive scheme," whereby Galieo offered travel agents using its CRS services to earn commissions based on the number of fares they booked on Ryanair. (Id. at ¶¶ 33-34.) Ryanair contends Galieo violated the

-8-

ICFA by directing these travel agents to book over 29,000 fictitious and speculative fares which were later cancelled but for which Galieo obtained payment from Ryanair. (Id. at ¶ 41.) As a result of the "incentive scheme," Ryanair alleges that it was left with "an inordinate number of empty, unpaid seats on [its] flights"(id. at ¶ 38) and "lost the opportunity to sell many tickets on its flights." (Id. at ¶ 46.) Consequently, based on the above facts alleged by Ryanair, this Court finds that the allegations relating to Ryanair's ICFA claim relate to airline "services" within the scope of the ADA's preemption clause, and therefore, Count III is preempted by the ADA.

### 2. Definition of "Significant Economic Impact" Under the ADA

Additionally, Galieo contends that Count III is preempted because application of the ICFA will have a significant economic impact upon airline services. To determine whether a state statute will have a significant economic impact, courts look to whether application of the state law will alter the parties' contractual bargain by "supplying external norms." Mesa, 219 F.3d at 609. See also Travel All Over the World, 73 F.3d at 1432. In Travel All Over the World, the Seventh Circuit allowed the plaintiffs' claim for compensatory damages pursuant to the Wolens exception, but held that the plaintiffs' claims for punitive damages did not fit into the Wolens exception because, "[r]ather than merely holding parties to the terms of a bargain, [a claim for] punitive damages represent[s] an 'enlargement or enhancement of [the bargain] based on state laws or policies external to the agreement.'" Travel All Over the World, 73 F.3d at 1432 n.8.

Similarly, the plaintiff in Lyn-Lea alleged that the defendant had breached an agreement by capping commissions the defendant paid to its travel agents. See Lyn-Lea, 1997 U.S. Dist. Lexis 21119 at *25. The court noted that the plaintiff was contractually bound to the agreement,

which granted the defendant the right to modify the commission structure at its discretion. Id. at *29-30. However, citing Wolens, the court declined to allow the plaintiff to "invoke state laws and policies external to the agreement," such as good faith and the Texas Deceptive Trade Practices Act, because these claims were "external" to the parties' original agreement and therefore imposed external requirements upon the defendant airline. Id. at *30.

Here, Count III requests that this Court find Galieo's "incentive scheme" constituted a "deceptive trade practice" under the ICFA and award the following damages: (1) damages for the "lost volume of Ryanair passenger seats"; and (2) punitive damages "in an amount sufficient to deter Galieo and other business [sic] from engaging in deceptive and misleading conduct." (Ryanair Countercl. at 24.) These proposed damages and claims rely on the ICFA which is external to the parties' original agreement. If this Court were to apply the ICFA to this action, "[r]ather than merely holding parties to the terms of [their] bargain," the Court would allow Ryanair to enlarge or enhance the original agreement "based on state laws or policies external to the agreement." Travel All Over the World, 73 F.3d at 1432 n.8. As noted above, the parties may not invoke state laws external to the contract, and therefore, this Court finds that Count III is preempted by the ADA for the reasons stated herein.

## II. A Claim for Breach of Good Faith Under Illinois Law

Galieo further contends that this Court should dismiss Court IV of Ryanair's amended counterclaim because Ryanair cannot assert an independent claim for breach of good faith under Illinois law.

Galileo is correct in that Illinois law does not permit a party to seek an independent claim for breach of the implied obligation of good faith which Illinois law incorporates into all

contracts. Baxter Healthcare Corp. v. O.R. Concepts, Inc., 69 F.3d 785, 792 (7th Cir. 1995). To bring a claim for breach of the obligation of good faith, a party must include such a claim within a breach of contract claim. Solon v. Kaplan, 2001 WL 123769, at *5 (N.D. Ill. Feb. 13, 2001) (denying motion to dismiss breach of good faith claim that was included in breach contract of count). Where a party fails to properly plead a claim for good faith within a count for breach of contract, the court should properly dismiss the separate claim for good faith. Echo, Inc. v. Whitson Co., Inc., 121 F.3d 1099, 1105-06 (7th Cir. 1997); Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough, 1999 WL 528499, at *9 (N.D. Ill. July 19, 1999).

Here, Ryanair concedes that it cannot state an independent claim for breach of good faith. However, Ryanair contends that its good faith claim is part of a count for breach of contract, and therefore is properly pled. Count IV is titled "BREACH OF CONTRACT (Obligation of good faith)" and incorporates by reference Ryanair's breach of contract claims (Counts I and II). This position is contrary to the Seventh Circuit's interpretation of Illinois law in Echo, Inc., 121 F.3d at 1105-06, where the court clearly stated independent claims of breach of duty of good faith are not permitted under Illinois law. Consequently, this Court GRANTS Galieo's motion to dismiss Count IV but grants Ryanair leave to properly replead its good faith claim consistent with Illinois law.

## CONCLUSION

For the reasons set forth above, Plaintiff/Counter-Defendant Galieo International, L.L.C.'s Motion to Dismiss Counts III and IV of Ryanair's Amended Counterclaims [15-1], pursuant to Federal Rule of 12(b)(6), is GRANTED as to Counts III and IV. The Court, however, grants Ryanair leave to properly replead its good faith claim (Count IV) consistent with Illinois law. It is so ordered.

ENTER:    *Blanche M. Manning*
         **BLANCHE M. MANNING**
         **U.S. DISTRICT COURT JUDGE**

DATE: 2-21-02